365 A.2d 1233

COMMONWEALTH of Pennsylvania

v.

**Alvin JOYNER, Appellant (two cases).**

Supreme Court of Pennsylvania.
Argued Oct. 21, 1975.
Decided Nov. 24, 1976.

334

Louis M. Natali, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, Alvin Joyner, was convicted by a jury of murder in the first degree and several related offenses.[1] The charges arose from an assault by appellant and others on a police guard house in Cobbs Creek Park in the City of Philadelphia during which one police officer was killed and another wounded. In this appeal,[2] Joyner ad-

---

1. Following the denial of his post-verdict motions, the defendant was sentenced to a term of life imprisonment for murder. Concurrent sentences were imposed for the other offenses (assault and battery, possession of explosives and carrying a concealed deadly weapon).

2. The appeal from the judgment of sentence imposed for murder is grounded in § 202 of the Appellate Court Jurisdiction Act, Act

vances six assignments of error. Because we have concluded that appellant is entitled to a new trial as a result of inflammatory and prejudicial remarks made by the prosecuting attorney during his summation to the jury, we need not consider the other issues presented.[3]

 Following the completion of the prosecutor's summation,[4] defense counsel moved for a mistrial because of a large number of allegedly improper statements made therein which were claimed to be prejudicial both individually and in their collective effect. After a full argument the motion was denied, and later a motion for new trial was denied. We are satisfied that the trial court erred in denying these motions. We are mindful, of course, that not every unwise or unwarranted remark made by counsel or the court in the course of a trial compels the granting of a new trial. *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973). "A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." 450 Pa. at

of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1). The appeal from the other offenses was properly taken to the Superior Court, which certified the appeal to this Court in order that the two appeals might be heard together.

3. The other issues are, first, that various statements appellant gave the police (a) were the product of an unnecessary delay between his arrest and arraignment in violation of our decision in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972); (b) were not preceded by a knowing and intelligent waiver of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (c) were involuntary under the totality of circumstances; and (d) were the product of confession which had been illegally obtained from another, and, second, that the trial court erred in denying appellant's motion for a continuance or in the alternative a change of venue due to prejudicial pre-trial publicity.

4. There was an agreement, approved by the court, between defense counsel and the attorney for the Commonwealth not to interrupt each other's summations, but to raise all objections at the conclusion of the closing statements. *Cf.* Pa.R.Cr.P. 1118.

611, 301 A.2d at 674. See also *Commonwealth v. Simon,* 432 Pa. 386, 248 A.2d 289, 292 (1968) ("In Pennsylvania, the law is clear that the alleged offending language's unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict").

The objectionable material in the prosecutor's summation can be grouped into three categories: (1) improper expressions of belief; (2) improper expressions of opinion as to credibility of witnesses; and (3) improper statements of fact.

### 1. *Improper Expressions of Belief*

Near the beginning of his jury speech, the prosecutor made the following observation:

> "We have heard a lot about the rights of Alvin Joyner, and I'm a lawyer, and I took an oath and I went to law school and I abide by the laws of this land and I love them and I respect them and *you,* ladies and gentlemen, *have borne witness to the unbelievable length our system of justice goes to protect the rights of an accused person.*
>
> "You have seen how many times I have been stopped during the course of the trial from bringing out things that might have been prejudicial. *I have been prevented from telling you a lot of things about this case."* R. 927–28 (Emphasis added)

The emphasized portions of the above statement clearly constitute an expression of the prosecuting attorney's own opinion that the system was unduly protective of accused persons. There is nothing in the record which suggests that the appellant received any more than he was entitled to by way of protection of his constitutional rights as those have been defined by the Supreme Court of the United States and by this Court. For the prosecu-

tor to seek to convey to the jury his own disagreement with the extent of those protections was altogether improper. Implicit in the statement is a belief that such safeguards are unnecessary when the defendant is guilty. (The statement also includes, of course, the implication that there was evidence of Joyner's participation in the Cobbs Creek Park murder in addition to that which was brought out at trial). We have often condemned such expressions of personal belief by a prosecutor. See *e. g. Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971); *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936). *See also* the Code of Professional Responsibility, Disciplinary Rule DR7–106(C)(4):

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

. . . . . . . .

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein." 438 Pa. xxv, ci–cii (1970).

*See also* American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, § 5.8(b) (Approved Draft, 1971).

Falling into this same category of unacceptable remarks are these statements:

"He [Alvin Joyner] is a high school graduate, and who I think, ladies and gentlemen, *you can infer, was the leader of this pack of murderers* because his position was at the top of the hill, and men are deployed, the shock troops are to go down the hill, and he is to

take up a position of command, which he does." (R. 953).

. . . . . . . .

"Why he hates police officers, that on August the 29th, 1970, that is why *he was the leader of this pack of murderers* and that he hates police officers today, and he figured the best way to beat the case and fool the jury is to tell how awful the police officers treated him, how awful these police officers are." R. 956–57. (Emphasis added).

We condemned just such a pejorative reference to a defendant in the case of *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936). There, during his summation, the district attorney had called the defendant "a cold-blooded killer." In our opinion granting a new trial we said:

"It is no part of the district attorney's duty and it is not his right, to stigmatize a defendant. He has a right to *argue* that *the evidence* proves the defendant guilty as charged in the indictment, but for the *district attorney himself to characterize* the defendant as "a cold-blooded killer" is something quite different. No man on trial for murder can be officially characterized as a murderer or as 'a cold-blooded killer,' until he is adjudged guilty of murder or pleads guilty to that charge." 322 Pa. at 204, 185 A. at 205 (emphasis in original).

See also *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974) and cases cited therein. Calling the present defendant the "leader of this pack of murderers," of course, is the same thing as calling him a murderer directly; and if a murderer, then guilty.

Apparently not content with the above indirect expressions as to the defendant's culpability, the assistant dis-

trict attorney at the conclusion of his speech made a flat declaration of guilt:

> "It is perfectly clear that this man is guilty, if not more, being a high school graduate, custodian of the grenades, clearly guilty of murder in the first degree." (R. 961)

In our recent case of *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975) we made it clear beyond cavil that statements such as this asserting the personal belief of the prosscutor as to the guilt of the defendant will not be tolerated: "such rhetoric 'is emphatically condemned.' " *Id.* at 142, 346 A.2d at 61.

## 2. *Expressions as to Credibility*

Section 5.8(b) of the ABA Standards Relating to the Prosecution Function states: "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." In the present case, the prosecutor told the jury that "apparently counsel does not believe his own defendant." It is obvious from the face of this statement that it was intended to denigrate the defendant's credibility. We have held that a prosecutor may not inject "his highly prejudicial personal opinion of appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses." *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492, 493 (1971) (prosecutor's characterization of a portion of the defendant's testimony at trial as a "malicious lie" held to be reversible error). The prosecutor's remark in this case is a bit more subtle than in the usual case; he does not comment directly upon the defendant's credibility but rather surmises that Joyner's own lawyer must doubt his story because the lawyer emphasized a different defense. As the Commonwealth explains in its brief, "This comment was designed to point out the in-

consistency between counsel's argument that appellant's will was overborne and appellant's own testimony that he had given no confession." This may be the explanation of the remark, but it does not detract from the prejudicial nature of what was said. The defendant is not bound by a single defense at trial; he may offer as many alternative defenses as he so chooses, and they need not be consistent. The prosecutor's comment was thus completely gratuitous.

### 3. *Improper Statements of Fact*

■■ The third area of our concern deals with improper statements of fact made by the prosecutor. The attorney for the prosecution, like other lawyers, is, of course, limited to making comments based upon the evidence and fair deductions and inferences therefrom. *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972). *See also* ABA Standards Relating to the Prosecution Function, § 5.9.[5] See also, *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975). We mention only a remark in which the prosecutor attempted to refute the defendant's argument that he had not actually confessed but that the police had concocted the alleged confession from statements made by codefendants. It was the contention of the Commonwealth that the defendant, being proud of his participation in the assault and killing, had willingly confessed. Thus the assistant district attorney told the jury:

"Well, don't you see what happened was when he was first brought in there, he was on top of the world. His name was spread all across every paper in the country. Matter of fact, I recall I myself was out of the country, and at that time I read about it. It was

5. "It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice."

even in Time Magazine the next week. They were front-page and they are proud of it." (R. 945)

This is a flagrant example of a prosecuting attorney giving unsworn testimony based upon matters not of record. Such personal assertion of fact within the prosecutor's own knowledge have no place in a criminal trial. See DR7–106(C)(3) of the Code of Professional Responsibility. The references on this case to pre-trial publicity are doubly offensive, for such publicity, if extensive enough, can of course be the occasion for a change of venue.[6] *See* Pa.R.Crim.P. 313. For the prosecutor to go out of his way to recall to the jury the publicity that attended the commission of this crime was uncalled for and unconscionable.[7]

By our decision today we do not mean to suggest that a prosecutor may not argue his case forcefully or that he must be "[shorn] of all oratorical emphasis." *DiCarlo v. U. S.,* 6 F.2d 364, 368 (2d Cir. 1925), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed.2d 1168 (1925). See also *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669 (1974). A prosecutor is free to argue reason-

6. Indeed, such a motion was filed and denied in this case.

7. The Commonwealth, in its brief, admits that certain of "the language complained of here might be considered to involve excessive implications of opinion and belief by the prosecutor, especially under recent opinions of this Court." It contends, however, that the remarks were provoked by the summation of defense counsel which had gone before: "Any breaches of propriety by the prosecutor were no more than response in kind." We have reviewed the defense counsel's summation in its entirety and have found nothing in it to justify the comments and remarks by the prosecutor. See and compare *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975).

The Commonwealth also contends that the cautionary passage in the court's charge that the jury was to ignore any expressions of personal opinion and belief made by counsel and that they were to decide the case strictly on the basis of the evidence before them was sufficient to "protect the interests of justice." In light of the nature of the objectionable comment, we do not believe the instruction was adequate to undo the harm. See *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974).

able inferences from the record. What he may not do is to interject his personal beliefs as to either the guilt of the defendant or the credibility of a witness nor may he argue from facts which may be within his personal knowledge but which are not of record. All of these limits were exceeded in this case.

Judgments of sentence reversed, and the case remanded for a new trial.