387 A.2d 841

**COMMONWEALTH of Pennsylvania**

v.

**Michael GRANT, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 9, 1978.

Decided June 2, 1978.

Neil E. Jokelson, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Gaele Barthold, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Michael Grant, was tried by a judge sitting with a jury and convicted of murder of the first degree and criminal conspiracy. Post-verdict motions were denied. Appellant was sentenced to life imprisonment for conviction of murder of the first degree and a concurrent five-to-ten year term of imprisonment on the conspiracy conviction. He appealed the judgment of sentence imposed on the conspiracy conviction to the Superior Court, which certified the appeal to this court for disposition with appellant's direct appeal from the judgment of sentence imposed on the conviction of murder of the first degree.

■ This court has an independent duty pursuant to the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187, to review the evidence and the law in all cases involving convictions for murder of the first degree and determine whether there exists sufficient evidence to sustain the conviction and the judgments of sentence entered thereon.

In *Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975), we articulated our test of sufficiency of the evidence:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence." (Citations omitted.)

Reviewing the facts of the instant appeal under the above standard, the facts are as follows. On August 15, 1973, Winston Boston, a correctional officer at Holmesburg Prison, and Jeffrey Hunter, a prison inmate, witnessed an argument between the decedent, Samuel Molten, and Edward Ryder. The argument centered on Molten's nonbelief in and disrespectful attitude toward the Black Muslim religion. Molten was not a Muslim while Ryder was a member of that religion's chapter in Cell Block E of the prison.

On August 16, 1973, Kenneth Covil, another member of the Muslim religion, ordered Hunter and the other inmates of the cell block to a meeting conducted by Theodore Brown, the leader of the Black Muslim organization of Cell Block E. Brown instructed Hunter and the other inmates at the meeting to report to appellant any disrespectful behavior to the Muslim religion by Molten and it would be taken care of by appellant.

Jerome Roach, also an inmate of Cell Block E, testified that on the night of August 16, 1973, he observed appellant and Covil sharpening a long metal rod in appellant's cell. When appellant noticed Roach, Covil obstructed Roach's view.

Robert Hall, another inmate, testified that on August 17, 1973, at 4:30 p. m., he was leaving his cell in Block E when he encountered Covil, Ryder and another man. Covil told Hall that they were "going to croak a lame." This phrase was defined as killing someone. Ryder entered appellant's cell, picked up a bundle and said, "Let's go." Hunter then observed Covil standing outside of decedent's cell, keeping watch. During this time, he heard loud breathing coming from decedent's cell. Within minutes Brown, Ryder and appellant emerged from the cell. Covil told Hunter, "You didn't see anything." Molten's body was discovered by a guard within minutes. Molten died as a result of fifty-four stab wounds in his chest.

■ The above evidence is sufficient to sustain appellant's convictions of murder of the first degree and criminal conspiracy.

Appellant argues that the court below erred in failing to sustain his objection to certain testimony by former assistant district attorney concerning his personal opinion as to the credibility of Robert Hall, a chief Commonwealth witness in this case. We agree with appellant that the court below erred and, therefore, we reverse and remand the case for a new trial.

The Commonwealth called the assistant district attorney in charge of the homicide division of the Philadelphia District Attorney's office at the time of the Molten slaying. The purpose of the testimony was to clarify whether any agreements for leniency were made with any of the inmate-witnesses testifying for the Commonwealth against appellant. The testimony concerning Robert Hall was as follows:

"Q. Did you make any promises or offers to Robert Hall concerning his testimony?

"A.   Concerning Robert Hall's testimony, I made no specific promises because again—by the way, there is one thing I do want to add.   Mr. Hunter's case, the case pending against him, was not a homicide case.   As I recall it was an aggravated robbery charge and I had no direct control over that.   That was another section of the District Attorney's Office.   If I were to do anything with that, I would have had to clear it with somebody from that segment of the office.

"Mr. Hall had pending against him a charge of murder. In fact, several months before this incident, I had ordered his arrest.   I didn't recall the incident but as soon as I knew that he was a witness, I went back to my file and reviewed it.   I asked Mr. Hall about that case.   He insisted to me that he had acted in self-defense and was not guilty.

"MR. JOKELSON:  Objection.

"MR. COGAN:  Only referring to the discussions, Your Honor, that went on between Mr. Rendell and the witness.

"MR. JOKELSON:  Motion, Your Honor.

"THE COURT:  Overruled.   Motion denied.

"A.   And he insisted that he was not guilty and insisted that he would be found not guilty and he said that his attorney had told him that he had an excellent chance to be acquitted also.

"My review of the facts of that case was such that his belief was not an outlandish belief.   I felt it was a very close case.

"MR. JOKELSON:  Objection.

"THE COURT:  Overruled.

"A.   (Cont.) But in any event, since he told me that he was pleading not guilty and wished to be tried and wished to be acquitted, again there was nothing specific I could do for him even if I wanted to do anything for him, but I also told him what I told Mr. Hunter.   I said, all right, Mr. Hall, all well and good.   But if you are convicted, I want you to know that *I will go before the judge and tell him that you testified in a case for the Commonwealth, it was*

*an important case and that you testified in accord with your statement and told what I believed to be the truth.*" Defense counsel objected and the court overruled the objection.

In *Commonwealth v. Russell*, 456 Pa. 559, 563–64, 322 A.2d 127, 130 (1974), this court, in considering testimony of a similar nature by a former district attorney, stated:

"This Court has consistently made it clear we will not allow the district attorneys of this Commonwealth to express their personal opinion or beliefs on issues which are within the province of the jury, when such opinions are not based on fair arguments from the evidence presented. See *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). We believe the instant case fits squarely within this line of cases. As recently as *Lipscomb*, we made it emphatically clear that expression of personal belief has no place in the argument of a district attorney to the jury. Herein the former assistant district attorney not only expressed his opinion on the guilt of Russell, but he also expressed an opinion on the believability of the defense witnesses who exonerated Russell, and these expressions of personal belief were without proper foundation. We, therefore, rule that a district attorney, whether he be a witness or a prosecutor, may not make improper statements of this nature, which clearly prejudice the accused. To do so is to violate the rights of the accused, and the professional standards which this Court demands and which society deserves."

In *Commonwealth v. Joyner*, 469 Pa. 333, 339, 365 A.2d 1233, 1236 (1976), this court continued to prohibit improper expressions by the district attorney concerning a witness' credibility by stating:

"Section 5.8(b) of the ABA Standards Relating to the Prosecution Function states: 'It is unprofessional conduct for the prosecutor to express his personal belief or opinion

as to the truth or falsity of any testimony or evidence or the guilt of the defendant.' In the present case, the prosecutor told the jury that 'apparently counsel does not believe his own defendant.' It is obvious from the face of this statement that it was intended to denigrate the defendant's credibility. We have held that a prosecutor may not inject 'his highly prejudicial personal opinion of appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses.' *Commonwealth v. Potter*, 445 Pa. 284, 286, 285 A.2d 492, 493 (1971) . . ."

■ The foregoing quoted portion of the testimony is a direct comment that Mr. Hall was a credible witness and that he was telling the truth. We are of the opinion that the court below erred in not sustaining appellant's objection to the testimony of the former head of the Philadelphia District Attorney's Homicide Division concerning the veracity of Robert Hall.

The Commonwealth argues that the comment was not of such a nature that it should be classified as reversible error. We do not agree.

In *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), we recognized that:

" . . . 'Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. Com. v. Hales*, 384 Pa. 153, 154, 119 A.2d 520; *Com. v. Stallone*, supra, 281 Pa. 41, 44, 126 A. 56; *Com. v. Savor*, 180 Pa.Super. 469, 119 A.2d 849, affirmed in 386 Pa. 523, 126 A.2d 444; *Com. v. Meyers*, 290 Pa. 573, 581, 139 A. 374.' *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957) (Emphasis added) . . . ."

■ We believe that the alleged prejudicial comments must be evaluated with regard to the circumstances of each trial, including, but not limited to: the nature of the comment, the person to whom the alleged prejudicial comment was directed, the identity of the person making the comment, and if a witness, the importance of that witness' testimony to either the Commonwealth's or defense's case, and whether the court gave immediate cautionary instructions if it deemed the remark prejudicial.

Under the facts of this case we believe that Rendell's comments must be classified as reversible error.

Most of the Commonwealth's witnesses who gave incriminating testimony against appellant were fellow prison inmates. Defense counsel's strategy on cross-examination was to attack their credibility and ascertain whether any deals for leniency were struck between the Commonwealth and the witnesses. The former district attorney was put on the stand during the Commonwealth's case-in-chief.[1] Given that a major defense strategy was attacking the witnesses credibility, we believe that the comments clearly intruded upon the jury's province as the judges of credibility. The attestation by the former head of the homicide division that Hall was telling the truth was aimed at an important Commonwealth witness. Hall testified that co-defendants of appellant, Ryder and Covil stated that they were going to kill someone, proceeded to appellant's cell, picked-up a bundle and proceeded to the decedent's cell. Within minutes, the decedent was found stabbed to death.

Although defense counsel objected, this objection was overruled and no cautionary instructions were given to the jury. Moreover, the assistant district attorney trying the case clearly emphasized the witness' prior position in the district attorney's office as chief of the homicide division and also explained his expertise. As was stated in *Russell, supra*:

" . . . Herein, the Commonwealth made every effort to impress upon the jury the witness was a 'former

---

1. Defendant presented no evidence at trial.

assistant district attorney.' When the Commonwealth clothes a witness in the vestiges of the office of district attorney, which clearly bear upon his credibility, the witness must conform to the standards this Court has established for district attorneys. . . ."

■ Under the facts of the instant case, the comments by the former district attorney are not harmless error beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).[2]

Judgments of sentence reversed and case remanded to the Court of Common Pleas of Philadelphia for a new trial.

ROBERTS, J., joins in this opinion and files a concurring opinion.

ROBERTS, Justice, concurring.

For the reasons set forth in the Opinion of the Court, which I join, the Opinion of the Court in *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976), and my Opinion in Support of Reversal in *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978), I believe the district attorney's comment on the credibility of Commonwealth witness Robert Hall prejudiced appellant and agree that appellant must be awarded a new trial.

**2.** Appellant raises the following allegations of error which we need not decide because of our resolution of the above issue: The court below erred (1) in failing to give the requested charge on voluntary manslaughter; (2) by prohibiting the defense from inquiring as to whether the Commonwealth made a "deal" with Robert Hall on an unrelated homicide charge; (3) in allowing Hall to testify concerning a statement Hall had made to a third party; (4) in allowing testimony of co-conspirators to be used against appellant; (5) in allowing a prison guard to testify concerning a photographic identification of appellant; (6) in not granting a mistrial after a witness mentioned appellant's suppression hearing; (7) in not prohibiting the assistant district attorney from trying the case when the defense stated prior to trial that it intended to call the assistant district attorney as a defense witness; (8) in denying appellant's points for charge concerning the weight of the evidence.