J-S67026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRED AUGUSTA MITCHELL | |
| Appellant | No. 578 WDA 2014 |

Appeal from the Judgment of Sentence April 3, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001539-2013

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JANUARY 22, 2015**

Appellant, Fred Augusta Mitchell, appeals from the April 3, 2014 aggregate judgment of sentence of 40 to 80 years' imprisonment imposed after he was found guilty by a jury of rape by forcible compulsion, rape of a child, involuntary deviate sexual intercourse (IDSI) by forcible compulsion, IDSI with a complainant who is less than sixteen years of age, aggravated indecent assault by forcible compulsion, aggravated indecent assault against a complainant who is less than thirteen years of age, indecent assault against a complainant who is less than thirteen years of age, and indecent

_____

[*] Former Justice specially assigned to the Superior Court.

assault by forcible compulsion[1]. After careful review, we are constrained to vacate Appellant's sentence and remand for resentencing. We affirm Appellant's conviction on all other bases.[2]

We summarize the relevant factual and procedural background of this case as follows. On February 24, 2012, M.N, then four years old, went to the doctor for a routine checkup. N.T., 1/9/14, at 53. While in the doctor's office, she informed Joyce Ames, her paternal grandmother, that her "cookie" hurt. *Id.* She indicated that she was referring to her genital area. *Id.* She also referred to her anus as "celery." *Id.* She continued to expound that Appellant put his "peanut" in her "cookie," and she explained that "Fred" told her about those terms. *Id.* 53-54. The doctor instructed Ames to take M.N. to Children's Hospital for an evaluation. *Id.* at 54.

On March 13, 2012, M.N. was interviewed at A Child's Place at Mercy by Sara Gluzman, a forensic interviewer trained in evaluating and interviewing children who are suspected victims of abuse. *Id.* at 90-91. During the course of the interview, Gluzman asked M.N. if there are places

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3121(c), 3123(a)(1), 3123(a)(7), 3125(a)(2), 3125(a)(7), 3126(a)(7), and 3126(a)(2), respectively.

[2] We also order the record in this case be sealed. **See** 42 Pa.C.S.A. § 5988(a) (providing that, in cases involving sexual or physical abuse of minors, "any records revealing the name of the minor victim shall not be open to public inspection[]").

people are not supposed to touch.[3] *Id.* at 101. M.N., in response, drew a picture and told Gluzman it was a "boob" and people are not supposed to touch it. *Id.* Gluzman showed M.N. an anatomical depiction of the human body, which she uses with all children she interviews, and asked M.N. what she called different areas of the body. *Id.* at 102. M.N. used the term "coochie." When Gluzman asked what she uses "coochie" for, M.N. explained her mother called it "peachie" and that it is used "to pee." *Id.* M.N. told Gluzman that Appellant put his "part" in her "peachie" and "butt." *Id.* at 106. M.N. also said it happened "[m]ore than one time." *Id.* Following the interview, Dr. Mary Carrasco, the director of A Child's Place at Mercy, performed an examination of M.N., which did not reveal physical evidence of abuse.[4]

On September 16, 2013, the Commonwealth filed an information charging Appellant with the aforementioned offenses. Criminal Information, 9/16/13, at 1-2. A three-day jury trial commenced on January 8, 2014. M.N., Ames, M.N.'s mother, Gluzman, and Dr. Carrasco testified on behalf of

_____

[3] The interview was recorded and played during the trial. The exchange between M.N. and Gluzman during the interview is included in the transcript of the trial.

[4] Dr. Carrasco testified at trial as an expert in pediatric child abuse. N.T.,1/9/14, at 119. She testified that the lack of physical findings "does not mean nothing occurred. … [M]ost of the time, that is 94% of the time, there will be no physical evidence of sexual abuse." *Id.* at 120-121.

the Commonwealth. After the Commonwealth rested, two defense witnesses testified. On January 10, 2014, the jury found Appellant guilty of all charged offenses.

Following the guilty verdicts, the Commonwealth filed its notice of intention to seek mandatory sentences pursuant to 42 Pa.C.S.A. § 9718(a).[5] The trial court conducted a sentencing hearing on April 3, 2014 and imposed the mandatory minimum sentences sought by the Commonwealth.[6] Appellant did not file post-sentence motions. On April 11, 2014, Appellant filed the instant timely appeal.[7]

_____

[5] Section 9718 provides for mandatory minimum sentences of, *inter alia*, not less than ten years' imprisonment for rape of a child and not less than ten years' imprisonment for any conviction under § 3123 (relating to IDSI), when the victim is less than sixteen years of age. 42 Pa.C.S.A. § 9718(a).

[6] Specifically, the trial court imposed sentences of twenty to forty years' imprisonment on count two, rape of a child; ten to twenty years' imprisonment on count three, IDSI by forcible compulsion; and ten to twenty years' imprisonment on count four, IDSI against a complainant who is less than sixteen years of age, with each sentence to run consecutively. The trial court determined count one merged with count two for the purpose of sentencing, and no further penalty was imposed on the remaining counts. Appellant was also sentenced to abide by the lifetime registration requirements pursuant to Section 9799.23 of the Pennsylvania Sexual Offender Registration and Notification Act.

[7] Contemporaneously with filing the notice of appeal, though not directed by the trial court, Appellant filed a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Thereafter, on April 21, 2014, the trial court ordered Appellant to file a statement of matters complained of on appeal within twenty-one days of the order. Trial Court Order, 4/21/14. No further statement was filed by Appellant. However, the trial court issued its Rule 1925(a) opinion on July

*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issues for our review.

I. Whether the evidence was legally and factually insufficient to show that [Appellant] committed the crimes of Rape, Forcible Compulsion, Rape of a Child, IDSI Forcible Compulsion, IDSI Person Less than 16 years of Age, beyond a reasonable doubt[?]

II. Whether the trial judge committed reversible error in permitting [M.N.] to testify on the lap of her grandmother, Joyce Ames, despite a sequestration of witnesses and over defense counsel's objection[?]

III. Whether the trial judge committed reversible error in permitting the drawing made by [M.N.] and the drawing by Forensic Interviewer, Sara Gluzman, to come into evidence and to be viewed in the jury deliberations, despite defense counsel's objection, as it was not provided in discovery by the Commonwealth[?]

IV. Whether the trial judge committed reversible error in failing to instruct the jury about improper prosecutor remarks during a closing when [Appellant] was called a "monster" and a "snake in the grass," despite an objection from counsel on the basis of **Commonwealth v. Joyner** [365 A.2d 1233 (Pa. 1976)][?]

V. Whether the trial judge committed reversible error in failing to instruct the jury on the failure to make prompt complaint in certain sexual offenses, when defense counsel specifically requested that the jury instruction be given[?]

Appellant's Brief at 6.

_(Footnote Continued)_ ──────────────────

1, 2014 and reproduced, verbatim, the issues raised in the statement of errors complained of on appeal filed on April 11, 2014. **See** Trial Court Opinion, 7/1/14, at 2.

Our standard of review regarding challenges to the sufficiency of the Commonwealth's case is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" *Id.* (internal quotation marks and citation omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Kearney*, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted), *appeal denied*, 101 A.3d 102 (Pa. 2014). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Id.* (citation omitted). "Because evidentiary

sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied*, ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

Appellant argues the evidence is insufficient because "[t]here are no eyewitness accounts of the alleged events, other then [sic] that of [M.N.]." Appellant's Brief at 9. However, before we may address the merits of Appellant's claim, we must first address whether Appellant has preserved this issue for review. Pennsylvania Rule of Appellate Procedure 1925(b) requires Rule 1925(b) statements to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(ii). Any issue not raised in accordance with Rule 1925(b) is waived. Pa.R.A.P. 1925(b)(vii). Our Supreme Court has clarified that Rule 1925(b) is a bright-line rule. ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011). Additionally, with regard to claims pertaining to the sufficiency of the Commonwealth's evidence, we have stated as follows.

> In order to preserve a challenge to the sufficiency of the evidence on appeal, **an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient**. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (internal quotation marks and citations omitted; emphasis added).

In the instant case, Appellant's challenge to the sufficiency of evidence in his Rule 1925(b) statement asserted, "[t]he evidence was legally and factually insufficient to show that [Appellant] committed the crimes of rape forcible compulsion, rape of child, IDSI forcible compulsion, IDSI person less than 16yrs [sic] of age, beyond a reasonable doubt." Appellant's Rule 1925(b) Statement, 4/11/14.[8]

Based on our cases, we are constrained to conclude that Appellant has not complied with Rule 1925(b) because his concise statement fails to specify which elements of the listed offenses the Commonwealth did not prove beyond a reasonable doubt. *See Garland*, *supra* (concluding that Garland's bald Rule 1925(b) statement that "[t]he evidence was legally insufficient to support the convictions[]" was non-compliant with Rule 1925(b)); *Commonwealth v. Williams*, 959 A.2d 1252, 1256 (Pa. Super. 2008) (concluding that Williams' bald Rule 1925(b) statement that "[t]here was insufficient evidence to sustain the charges of Murder, Robbery, VUFA no license, and VUFA on the streets … [t]hus [Appellant] was denied due

_____

[8] We note Appellant failed to append the Rule 1925(a) opinion of the trial court as well as his Rule 1925(b) statement of matters complained of on appeal to his brief, as required by Pa.R.A.P. 2111(b)(d).

process of law[]" was non-compliant with Rule 1925(b)). Accordingly, this claim is waived.[9]

Appellant next contends that the trial court committed reversible error by permitting M.N. to testify on the lap of her grandmother, over defense counsel's objection, despite the trial court's sequestration order. Appellant's Brief at 10. After, careful review, we conclude this argument is without merit.

We are guided by the following principles when examining a challenge to a sequestration order. "[Our] standard of review for a trial court's decision on sequestration of witnesses is abuse of discretion." *Commonwealth v. Stevenson*, 894 A.2d 759, 767 (Pa. Super. 2006) (citation omitted), *appeal denied*, 917 A.2d 846 (Pa. 2007). Moreover, in order for this Court to afford relief, an appellant must demonstrate that the

_____

[9] We observe that had Appellant properly preserved this issue, he would not be entitled to relief. In support of this claim, Appellant asks this court to reweigh the evidence presented at trial. *See* Appellant's Brief at 9. Specifically, Appellant recounts, "[t]he defense presented two witnesses, both of which testified that this could have been a scheme devised by [M.N.'s mother]...." The jury in this case was free to credit M.N.'s testimony and disregard the speculative testimony proffered by the defense. *See Kearney, supra*. Moreover, "it is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citations and quotation marks omitted). Therefore, viewing the evidence in the light most favorable to the Commonwealth, sufficient evidence was presented to find Appellant guilty of the charged offenses beyond a reasonable doubt. *See Patterson*, *supra*.

sequestration order challenged caused actual prejudice to him or her. ***Id.*** (citation omitted).

We note, initially, Appellant cites this Court's decision in ***Stevenson***, ***supra*** for the proposition that "[an] [a]ppellant must demonstrate that he or she was actually prejudiced by a trial judge's sequestration order before any relief may be ordered." Appellant's Brief at 10 *quoting* ***Stevenson, supra*** at 767. However, despite this correct observation of his burden, Appellant's argument is wholly lacking in any suggestion that actual prejudice resulted in this decision of the trial court. ***See*** Appellant's Brief at 10.

It is long established, "when briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authority." ***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011) (citation omitted); Pa.R.A.P. 2119. Likewise, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) *cert. denied*, ***Johnson v. Pennsylvania***, 131 S. Ct. 250 (2010). Appellant's brief cites one case in this argument, but Appellant fails to develop any pertinent discussion applying the legal authority cited to the facts of the instant case.

*See* Appellant's Brief at 10; *see Kane*, *supra*. Nevertheless, we decline to find waiver and will address Appellant's argument.

Herein, the Commonwealth moved for the trial court to permit M.N. to testify while seated on her grandmother's lap. N.T., 1/9/14, at 6.[10] The defense argued in opposition to the motion that permitting this manner of testimony would be "in direct opposition to the sequester rule …." *Id.* at 12. The trial court ultimately decided to grant the Commonwealth's motion and created an exception to its sequestration order to allow M.N. to testify while seated on her grandmother's lap. *Id.* at 15.

As noted, Appellant's brief fails to specify how this exception to the sequestration order resulted in prejudice. *See* Appellant's Brief at 10. However, Appellant correctly observes that he must prove actual prejudice in order to receive relief. *Id.* Furthermore, "the purpose of sequestration is to prevent a witness from molding his testimony with that presented by other witnesses." *Stevenson, supra* at 767 (citation omitted); *see also* Pa.R.E.

_____

[10] The Commonwealth cited *Commonwealth v. Pankraz*, 554 A.2d 974 (Pa. Super. 1989), *appeal denied*, 563 A.2d 997 (1989) in support of its motion. N.T., 1/8/14-10/14, at 6. On appeal, this Court did not find error with a trial court's decision to allow a child to testify while seated on her grandmother's lap. *Pankraz*, *supra* at 980. Specifically, this Court stated, "[g]iven the trial court's broad discretion, the tender age of the child, and the nature of her testimony, we cannot say that it was an abuse of the trial court's discretion to permit the child to sit in her grandmother's lap while giving testimony." *Id.*

615 (stating a party, or the court, may order sequestration to prevent witnesses from hearing the testimony of others).

Prior to the Commonwealth presenting its case, the trial court conducted an *in camera* hearing of Ames to determine the substance of her testimony*.* N.T., 1/9/14, at 27-30. Following the in *camera hearing*, the Commonwealth called M.N. as its first witness.[11] **Id.** at 30. Ames testified next for the Commonwealth. **Id.** at 50. On cross-examination, Appellant's counsel asked Ames if she recalled the earlier testimony of M.N. **Id.** at 58. Ames replied, "[n]o, I wasn't paying attention. I was just, because I was told to be just a chair and not move." **Id.**

It is abundantly clear from our review of the transcripts that the trial court took careful and appropriate action to ensure no prejudice occurred as a result of the exception to the sequestration order. By conducting an *in camera* hearing prior to M.N.'s testimony, the trial court was able to determine if Ames molded her testimony to conform to her granddaughter's. Ames' testimony at trial was consistent with her *in camera* testimony, and therefore, Appellant cannot demonstrate that the exception to the general

_____

[11] We note the trial court also gave Ames specific instructions with regard to her presence during M.N.'s testimony to prevent any influence on M.N.'s testimony. N.T., 1/9/14, at 31. "[Y]ou are not permitted to not only answer any question for her but suggest to her in any way possible what the answer should be." **Id.** At the conclusion of M.N.'s testimony, the trial court noted Ames did not make any verbal or nonverbal suggestions to M.N. during M.N.'s testimony. **Id.** at 49.

sequestration order resulted in prejudice to him. **See Stevenson**, **supra** at 767.

Accordingly, we conclude the trial court did not abuse its discretion by making an exception to the general sequestration order, and Appellant has failed to demonstrate that he was prejudiced by the exception. **See id.** Therefore, Appellant's claim is without merit.

Appellant's third claim of error is a challenge to the admission of a drawing done by M.N. and the anatomical depiction used by Gluzman during her interview of M.N. into evidence on the basis that they were not provided to Appellant in discovery. **See** Appellant's Brief at 11.

We employ a narrow standard of review on challenges to the admissibility of evidence. **Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa. Super. 2012), *appeal denied*, 62 A.3d 379 (Pa. 2013).

> [I]n reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. … To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Id.**

Appellant argues the admission of the drawings was error because, "[b]ut for those pictures, the jury would have never known where the alleged victim, [M.N.], was referring to when she used the words 'cookie' and 'peach.'" Appellant's Brief at 11. Appellant's argument continues,

- 13 -

"[M.N.] never told the Forensic Interviewer, Sara Gluzman, what those terms, 'cookie' and 'peach' meant, or what body parts they referred to, other then [sic] the two drawings." *Id.*

It is well-settled that "the failure to raise a **contemporaneous objection** to the evidence at trial waives that claim on appeal." ***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (emphasis added, citation omitted). In addition, "to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal." ***Commonwealth v. Akbar***, 91 A.3d 227, 235 (Pa. Super. 2014) (citation omitted).

At trial, the Commonwealth presented testimony from Gluzman as well as her videotaped interview with M.N. ***See*** N.T., 1/9/14, at 90-115. Prior to playing the video of the interview, the Commonwealth asked Gluzman about drawings that were produced and used throughout the interview. *Id.* at 92. Counsel for Appellant objected on the basis that the drawings had not been provided to the defense in discovery. *Id.* Counsel conceded that she had notice of the recorded interview months before trial but argued she did not have notice of the drawings because she had not viewed the video until the morning of trial. *Id.* at 93. The trial court directed the Commonwealth to stop its direct examination of Gluzman and play the video for the jury. *Id.*

at 93-94. The trial court reserved its ruling on the objection until after the video was played. *Id.* At the conclusion of the video, the trial court ruled the witness could explain the drawings. *Id.* at 107. When the Commonwealth moved to admit the drawings into evidence, Appellant's counsel did not object. *Id.* at 111.

> [Commonwealth]: Okay, and Your Honor, I would move for the admission of Commonwealth's #1, #2, and #3 [video recording of interview, drawing M.N. produced during interview, and anatomical depiction of body used by Gluzman during interview] into the record.
>
> [Trial court]: [Counsel for Appellant], any objection at this time?
>
> [Counsel for Appellant]: No, Your Honor.
>
> [Trial court]: Okay. We'll grant your motion and admit #1, #2, and #3.

N.T., 1/9/14, at 111.

Though Appellant initially objected to the Commonwealth's demonstrative use of the drawings during the testimony of Gluzman, there was no contemporaneous objection to the admission of the drawings into evidence. Therefore, because Appellant failed to object at the appropriate stage of the proceedings, this claim has not been preserved, and the issue is waived. *See Thoeun Tha*, *supra*; *Akbar*, *supra*.[12]

_____

[12] We recognize, however, that had the issue been properly preserved, it is without merit. Appellant's claim that the jury would be unaware of what the
*(Footnote Continued Next Page)*

Appellant's fourth claim of error contends the trial court "committed reversible error in failing to instruct the jury about improper remarks during a closing when [Appellant] was called a 'monster' and a 'snake in the grass,' despite an objection from counsel …." Appellant's Brief at 12. The record does not support this argument.

It has long been established "that to preserve for appellate review an objection relating to the opening or closing of opposing counsel, the objection must be specific and brought to the trial judge's attention as soon as is practical." *Commonwealth v. Sanchez*, 82 A.3d 943, 969-970. (Pa. 2013) (citations omitted), *cert. denied*, 135 S. Ct. 154 (2014). Here, Appellant timely objected during the Commonwealth's closing argument, and the relevant exchange occurred.

> [Counsel for Appellant]: Objection, Your Honor. May we approach?
>
> [Trial Court]: Yes.
>
> [Counsel for Appellant]: Your Honor, *Commonwealth v.* [*Joyner*], 469 Pa. 433[, 365 A.2d 1233 (Pa. 1976)], in a closing there are objectionable areas that a prosecutor is not allowed to state in a courtroom. He's calling, one of those objections are improper expressions of personal belief. He's calling my client a monster, Your Honor,

*(Footnote Continued)* ───────────

terms "cookie" and "peach" refer to is belied by the record. The record is replete with testimony clarifying to what M.N. was referring when she used those terms. *See*, *e.g.* N.T., 1/9/14, at 28, 53-54, 102. Therefore, even assuming, *arguendo*, the admission of the drawings into evidence was error, Appellant cannot demonstrate prejudice resulted. *See*, *Lopez*, *supra*.

that's his personal belief. It is not for him to determine whether or not my client is a child molester, a predator, a snake in the grass, any of these things. It's up to the jury to determine and there should be some testimony presented.

[Commonwealth]: Your Honor, he's a monster to [M.N.], and that's my argument, because monsters wake little kids up at night.

[Counsel for Appellant]: That's an improper argument.

[Trial court]: I'll give a cautionary instruction to the jury, we'll sustain with a cautionary instruction and ask you [Commonwealth] to keep the inferences a little more amenable so as to not prejudice the jury.

N.T., 1/10/14, at 15-16. Following the discussion at sidebar, the trial court instructed the jury as follows.

[Trial court]: [Counsel for Appellant], we will sustain your objection at this time and ladies and gentleman of the jury, in my charge I'm going to give you an instruction regarding arguments of counsel, but I'll do it very briefly now as well since there has been an objection.

The arguments of counsel are not part of the evidence and you should not consider them as such, but we, of course, ask you to weigh each of the arguments of counsel as they are required to make that in a light most favorable to each side, but keep in mind that you are the sole triers of the facts, and nothing that either counsel says or that I say is a fact. You are to determine the facts of this case, and I'll expand a little bit more on that instruction in my final charge. So, we'll sustain your objection at this time and [Commonwealth] we'll ask you to move forward.

*Id.* at 16. The Commonwealth proceeded to finish its closing argument. No further objection was made.

Our rules of appellate procedure are clear that "[a] general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of." Pa.R.A.P. 302(b). In the instant case, Appellant objected to the remarks of the Commonwealth during closing argument. N.T., 1/10/14, at 15. Immediately, the trial court ruled in Appellant's favor and gave a curative instruction. *Id.* at 16-17. Indisputably, Appellant received the requested relief at trial when the trial court sustained his objection and no further objection to the Commonwealth's argument was made. *Id.* Accordingly, this issue is without merit.

In Appellant's final issue, Appellant argues the trial court "committed reversible error in failing to instruct the jury on the failure to make prompt complaint in certain sexual offenses, when [counsel for Appellant] specifically requested that the jury instruction be given." Appellant's Brief at 13.

In reviewing such a challenge, we are guided by the following principles.

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of

- 18 -

review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

***Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa. Super. 2006) (internal citations, quotation marks, and brackets omitted).

The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. ***See id.*** The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. ***See Commonwealth v. Prince***, 719 A.2d 1086, 1091 (Pa. Super. 1998). …

"The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim." ***Thomas***, 904 A.2d at 970. For instance, "[w]here an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication." ***Commonwealth v. Jones***, 449 Pa.Super. 58, 672 A.2d 1353, 1357 n. 2 (1996).

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013), *appeal denied*, 81 A.3d 77, 835 (Pa. 2014).

> In such an assessment the witness' understanding of the nature of the conduct is critical. Where the victim did not comprehend the offensiveness of the contact at the time of its occurrence, the absence of an immediate complaint may not legitimately be used to question whether the conduct did in fact occur.

*Commonwealth v. Snoke*, 580 A.2d 295, 298-299 (Pa. 1990) (citations omitted).

Appellant advances the argument that the failure to give the instruction was improper because the Advisory Committee Note to Pennsylvania Suggested Standard Jury Instruction 4.13A "does not state that **anytime** there is an alleged victim that is a child, this instruction is improper. Instead, it states that only if they do not have the mental infirmity, then the instruction is improper." Appellant's Brief at 13 (emphasis in original).

The trial court explained its rationale, "[i]n reliance upon the Advisory Committee Note and after review of *Snoke*, the [c]ourt denied Appellant's motion to read that instruction." Trial Court Opinion, 7/1/14, at 21, *citing* N.T., 1/10/14 at 165.

In the instant case, M.N. was four years old during the relevant time period, and she reported the incident at a doctor's visit using terms that were taught to her by Appellant to reference her sexual organs. Further, the

evidence revealed M.N. was scared to tell her mother because Appellant told her she was not allowed. *See* N.T., 1/9/14 at 53-54. Based on the young age and condition of M.N. at the time, we conclude the record supports the trial court's decision, and we discern no abuse of discretion in the trial court's refusal to instruct the jury on M.N.'s delay in reporting the offense. **See *Sandusky, supra***.

Moreover, the testimony of Ames strongly implies M.N. reported the incident **prior** to the disclosure at the doctor's office. Ames testified, *in camera*, that when M.N. told her that her "cookie" hurt in the doctor's office, she initially believed M.N. meant she wanted a cookie.

> I thought she wanted a cookie, because when she was at my house, she would get up during the night, don't touch my cookie. … And then when we was [sic] at the doctor's after the doctor checked her and she went and she said her cookie hurt, and I said, your cookie? You don't have a cookie. And she said, yeah, and pointed to her private, her vagina area.

N.T., 1/9/14, at 28. She further testified on cross-examination before the jury, "she would just get up in the night crying her cookie hurt. … I thought she was talking about chocolate chip cookies. … She cried and said that her cookie, she didn't want nobody touching her cookie." ***Id.*** at 58. Consequently, the trial court would have been within its discretion in refusing the instruction had it determined that M.N. had indeed reported the incident at the first available opportunity, rendering the requested

instruction inapt. **See** **Sandusky**, **supra**; **Snope**, **supra**.[13] Thus, Appellant's final claim is without merit.

Although we have concluded all of Appellant's issues on appeal are either waived or devoid of merit, we proceed to consider the legality of Appellant's sentence, *sua sponte*. We begin by observing the following principles regarding waiver on appeal. Relevant to the instant case, "where application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits, such legality of sentence questions are not waivable." **Commonwealth v. Valentine**, 101 A.3d 801, 809 (Pa. Super. 2014) (citation, brackets, and quotation marks omitted). "Legality of sentence questions … may be raised *sua sponte* by this Court*.*" **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013 (*en banc*), *appeal denied*, 95 A.3d 277 (Pa. 2014) (citation omitted). Finally, "a challenge to a sentence premised upon [the Supreme Court's decision in] **Alleyene** [v. **United States**, 133 S.Ct. 2151 (2013)] likewise implicates the legality of the sentence and cannot be waived on

_____

[13] We conclude the trial court was acting within its discretion in refusing the requested instruction based on the Advisory Committee notes to the Suggested Standard Jury instructions. However, we also observe, "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded the trial judges in crafting jury instructions; rather, as their title suggests, the instructions are guides only." **Commonwealth v. Simpson**, 66 A.3d 253, 285, n. 24 (Pa. 2013).

appeal." ***Commonwealth v. Newman***, 99 A.3d 86, 90 (Pa. Super. 2014)

(*en banc*). Therefore, we address the issue of Appellant's sentence.

In examining the legality of a sentence on appeal, this Court employs

the following standard of review.

> A challenge to the legality of a sentence … may be entertained as long as the reviewing court has jurisdiction. It is also well-established that if no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is *de novo* and our scope of review is plenary.

***Commonwealth v. Cardwell***, --- A.3d ---, 2014 WL 6656644, *1 (Pa.

Super. 2014) (citations omitted).

As noted, Appellant was sentenced pursuant to the mandatory

minimum statute at Section 9718.

> **§ 9718. Sentences for offenses against infant persons**
>
> **(a) Mandatory Sentence.—**
>
> > (1) A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows:
> >
> > …
> >
> > 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)—not less than ten years.
> >
> > …

(3) A person convicted of the following offenses shall be sentenced to a mandatory term of imprisonment as follows:

18 Pa.C.S. § 3121(c) and (d)—not less than ten years.

…

**(c) Proof at sentencing.—**The provisions of this section shall not be an element of the crime, and notice of the provisions of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S.A. § 9718.

"In **Alleyne**, the [United States] Supreme Court held that facts that increase the mandatory minimum sentences must be submitted to the jury and must be found beyond a reasonable doubt." **Commonwealth v. Miller**, --- A.3d ---, 2014 WL 4783558, *4 (Pa. Super. 2014) (citation and quotation marks omitted). In light of **Alleyne**, this Court in **Newman**, concluded that the mandatory minimum provision set forth at Section 9712.1 "could no longer pass constitutional muster." **Newman, supra** at 98. The **Newman** Court concluded that the entire mandatory minimum statute at Section 9712 is unconstitutional. **Id.** at 103. In **Valentine**, this Court determined that the mandatory minimum sentences imposed pursuant to Sections 9712 and

9713 were unconstitutional even if the facts that trigger the mandatory minimum sentence are submitted to a jury and found beyond a reasonable doubt instead of by the trial court by a preponderance of evidence at sentencing. **Valentine, supra** at 811-812. In so concluding, the Court recognized that our decision in **Newman** held "that the unconstitutional provisions of § 9712(c) and § 9713(c) are not severable … and that the statutes are therefore unconstitutional as a whole." **Id.**

The logic of **Newman** and **Valentine** was subsequently applied in **Commonwealth v. Fennel**, --- A.3d ---, 2014 WL 6505791 (Pa. Super. 2014). In **Fennell**, the appellant stipulated at trial to the fact that would increase the mandatory minimum pursuant to Section 7508. **Fennel, supra** at *5. This Court concluded the stipulation did not cure the constitutional defect.

> [W]e see no meaningful difference, for the purposes of **Newman** and **Valentine** between submitting the element to jury and accepting a stipulation from a defendant. … Both **Newman** and **Valentine** unequivocally state that creating a new procedure in an effort to impose a mandatory minimum sentence is solely with the province of the legislature.

**Id.** at *6. Finally, in **Commonwealth v. Wolfe**, --- A.3d. ---, (Pa. Super. 2014) this Court addressed the constitutionality of Section 9718 in light of this Court's decisions in **Newman** and **Valentine**. In **Wolfe**, the appellant received a mandatory minimum sentence following his conviction of two counts of IDSI pursuant to Section 9718(a)(1). **Wolfe**, **supra** at *2. We

- 25 -

acknowledged that Section 9718 differs from the mandatory minimum statutes struck down in **Newman** and **Valentine** because the fact triggering the mandatory minimum sentence pursuant to Section 9718, *i.e.* that the victim is less than sixteen years of age, was an element of the IDSI statute under which the appellant was convicted. **Id.** at *10-*11; **see** 18 Pa.C.S.A. §3121(1)(7)(a). Therefore, in order for the jury to convict the appellant in **Wolfe**, they were required to find, beyond a reasonable doubt, that the victim was less than 16 years old. **Wolfe**, **supra** at 11. Nevertheless, we concluded that this Court's decision in **Newman** "stands for the proposition that mandatory minimum sentences … of this format are void in their entirety." **Wolfe**, **supra** at *13 (citations omitted). Consequently, Section 9718 is facially void. **See Wolfe**, **supra** at *14.

In the instant case, Appellant received mandatory minimum sentences for his convictions of rape of a child, IDSI by forcible compulsion, and IDSI against a complainant who is less than sixteen years of age pursuant to Section 9718, the same sentencing statute that we struck down as facially void in **Wolfe**. Therefore, we are constrained to conclude Appellant's sentence is unconstitutional.

Based on the foregoing, we conclude the trial court imposed an illegal sentence when it sentenced Appellant pursuant to Section 9718. Accordingly, we vacate the April 3, 2014 judgment of sentence and remand to the trial court, with instructions to resentence Appellant without

consideration of the mandatory minimum sentence at Section 9718, consistent with this memorandum. In all other aspects, we affirm.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Record sealed. Jurisdiction relinquished.

Judge Donohue joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2015